**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JAVIER RIVERA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEPOP, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Javier Rivera ("Plaintiff"), on behalf of himself and all others similarly situated, complains and alleges upon information and belief based, among other things, on the investigation made by Plaintiff and through his attorneys, as follows:

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Depop, Inc. ("Defendant" or "Depop"), arising from its unlawful addition of "Marketplace Fees" to consumers' shopping carts.

2. Depop is one of the world's largest online fashion marketplaces, with over 50 million registered users.[1] Consumers use Depop's website to purchase clothing, shoes, and other similar accessories.

3. Depop advertises the price of each item for sale on its website. However, Depop deceives customers by omitting a mandatory Marketplace Fee from its listed prices.

[1] Depop, *About Depop*, http://www.news.depop.com/who-we-are/about/ (last accessed Mar. 20, 2026).

4. Depop's Marketplace Fee is not disclosed in its initially advertised prices, which leads reasonable consumers to believe they will pay a total price that is less than the price they ultimately pay.

5. Indeed, Depop waits until consumers have gone through the laborious process of selecting various clothing items before disclosing the Marketplace Fee, which is not revealed until the consumer proceeds to the very end of the checkout process.

6. Consumers are blindsided by the additional fee, requiring them to re-evaluate or forgo their purchase plans—or to begrudgingly expand their budgets. Other consumers do not even notice that they have been charged an additional fee by Depop.

7. Depop's furtive imposition of its Marketplace Fee is deceptive and unfair because: a) Depop does not disclose the added Fee until the very last step in the purchasing process; b) the Fee itself constitutes "drip pricing"; and c) the Fee provides no real benefit to customers, and instead, is a way for Depop to increase its profits, and pass off its operational costs to the consumer.

8. As a result of its unlawful conduct as alleged herein, Depop has caused Plaintiff and Class members to bear mandatory expenses and costs they otherwise should not have had to bear and to be misled as to the actual price of the products they purchased.

9. Plaintiff seeks damages and, among other remedies, declaratory and injunctive relief to prevent Depop from continuing to engage in its illegal practices as alleged herein.

## PARTIES

10. Plaintiff is a resident and citizen of Chicago, Illinois.

11. Defendant is an online consignment and thrift store incorporated in Delaware with its headquarters located in New York.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §1332(d), this Court has subject matter jurisdiction because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,000,000.00, (2) the proposed Class is comprised of at least 100 members, and (3) minimal diversity exists between at least one member of the proposed Class is a citizen of a state different from Defendant.

13. Plaintiff is informed and believes that this Court has personal jurisdiction over Defendant because Defendant does business with sufficient minimum contacts in Illinois, and/or otherwise intentionally avails itself of the Illinois market by conducting business throughout Illinois, including in Cook County, which has caused both obligations and liability of Defendant to arise here.

14. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchase and payment of the Marketplace Fee.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. Depop Charges a Hidden, Mandatory "Marketplace Fee"

15. Here's how Depop's unlawful drip-pricing practices work, using an exemplar transaction made through Depop's website to illustrate. When a consumer visits Depop's website, the consumer is shown each item's purchase price upfront.




16. When a user selects an item for purchase, the price is again displayed on the page.



17. Once the consumer adds the item to their online shopping "bag," the same price is displayed and Depop affirmativel labels the item price as the "Total," noting only that shipping would be "calculated at checkout" thereby representing to consumers that no other mandatory charges would apply.




18. Finally, once the consumer proceeds to checkout, Depop reveals that the consumer is also subject to its additional "Marketplace Fee," which Depop does not disclose at any prior point during the transaction.



19. By the time Depop discloses its "Marketplace Fee," consumers have already spent their time carefully reviewing and selecting the clothing items they wish to purchase. In doing so, users have relied on Depop's previously advertised prices.

20. Depop's omission of the mandatory Marketplace Fee until the very end of the order process is an unfair practice designed to string consumers along with the false impression of lower prices and to prevent consumers from being able to make an accurate comparison between Depop's prices and those of competitors.

## II. Depop's "Marketplace Fee" is an Unlawful Junk Fee Designed to Maximize Profits

21. Depop's failure to clearly and prominently disclose its Marketplace Fee is deceptive, unfair, and misleading to consumers, who are led to believe they will pay only the advertised price for the items they purchase on the Depop platform and that they are paying the same price using the Depop platform as they would had they purchased from the seller directly.

22. In reality, Depop is sneaking in a Marketplace Fee in varying amounts (often tied to the consumer's subtotal) on all orders, causing consumers to overpay for their purchases. The variability of this fee underscores its arbitrariness and confirms that the Fee is not a fixed charge tethered to any legitimate, unavoidable cost of processing a transaction.

23. Although the Fee is mandatory for consumers using the Depop platform, no portion of the Marketplace Fee constitutes any legitimate, government-imposed tax or fee, nor is it gratuity paid to sellers.

24. Depop surreptitiously adds the Marketplace Fee to all orders by sneaking the Fee in at the end of the transaction—only after all other information has been inputted by the customer and they are ready to complete payment. The timing and placement of this Fee obscure the true

total cost of payment through Depop and prevent consumers from recognizing it as part of the purchase price until the last moment.

25. Depop's failure to disclose its Marketplace Fee on its website until a consumer reaches the end of their transaction directly is deceptive and unfair, as Depop's Marketplace Fee is neither a government-imposed tax or fee nor a charge for shipping.

26. Accordingly, many consumers do not notice that an additional fee is being added to their order. Consumers who do notice the previously undisclosed Marketplace Fee often decide to go through with their purchase anyway, as they have already invested substantial time and effort into using Depop's platform. This is a classic form of digital "drip pricing" that exploits consumer inertia and effectively deprives consumers of meaningful choice.

27. Drip pricing succeeds pricing succeeds by exploiting well-documented psychological mechanisms. Regulators have found that once a consumer has committed to a purchase, abandoning the transaction in the face of a late-disclosed fee can produce discomfort and cognitive dissonance, and that sellers engaged in drip pricing rely on the additional effort required for consumers to back out at the final step. Behavioral biases reinforce these mechanisms, including "anchoring" (the tendency to fix on initial price information), the sunk-cost fallacy (the tendency to continue a process after investing time and effort in it), and the endowment effect (the tendency to place a higher value on items consumers have imagined owning). *See* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 29–30 (Apr. 2022); Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 8–9 (Sept. 2022).

28. Empirical research confirms both the power of drip pricing and its harms. One experimental study found that consumers who were not shown the full price of a product—

including mandatory fees—at the outset of a transaction spent approximately 20% more and were 14% more likely to complete their purchases than consumers shown full prices upfront, and that sellers engaged in drip pricing set drip fees as high as possible while competing only on base prices. *See* Alexander Rasch, Miriam Thöne & Tobias Wenzel, *Drip Pricing and Its Regulation: Experimental Evidence*, 176 J. Econ. Behavior & Org. 353 (2020); *Bringing Dark Patterns to Light*, *supra*, at 9.

29. On information and belief, Depop's Marketplace Fee is nothing more than an additional junk fee designed to increase profits without providing customers any additional value. That the "Marketplace Fee" does not actually fund Depop's operating costs is made clear by the fact that the Fee is not a set amount or percentage, but instead varies unpredictably from transaction to transaction—demonstrating that the Fee is not tethtered to any specific, unavoidable operational or platform costs and is instead a discretionary fee imposed to inflate revenue.

30. This artificial surcharge represents a deliberate and unlawful profit-maximization scheme at the expense of unsuspecting consumers.

31. Because it provides no value to consumers, Depop's Marketplace Fee is nothing more than a classic hidden "junk fee." Such fees have come under government scrutiny in recent years. As the White House explains:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, Mar. 5, 2024, available at https://bidenwhitehouse.archives.gov/cea/written-

materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/.

32. As the Federal Trade Commission said recently regarding its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, Oct. 11, 2023, available https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

33. Illinois has left no doube where it stands. In 2026, the State enachted the Junk Fee Ban Act, H.B. 228, 104th Gen. Assem. (Ill. 2026), making it unlawful for any business to advertise, display, or offer a price for a product or service that does not include all mandatory fees or surcharges—precisely the practice Depop employs. In signing the Act, Governor JB Pritzker denounced junk fees as surprise charges conealed from consumers until the final stage of a purchase, and declared that in Illinois, the price consumers see is the price they pay.[2]

34. The Illinois Attorney General has likewise condemnded hidden fees and drip pricing as unfair and deceptive business practices. In December 2024, the Illinois Attorney General and the FTC sued the food-delivery platform Grubhub for luring diners with advertised low or no

[2] *See* Press Release, Office of Gov. JB Pritzker, *Gov. Pritzker Signs Legislation to Ban Junk Fees and Protect Consumers* (June 25, 2026), available at https://gov-pritzker-newsroom.prezly.com/gov-pritzker-signs-legislation-to-ban-junk-fees-and-protect-consumers.

cost delivery, then adding substantial fees at checkout. Grubhub paid $25 million and agreed to disclose the true total cost upfront and stop adding junk fees to orders.[3]

35. As Attorney General Raoul has made clear, hidden fees and "drip pricing" are unfair and deceptive because consumers deserve to see an item's full price before the point of sale—not after they are committed to the purchase.[4]

36. Covertly added fees like Depop's Marketplace Fee are also unfair, deceptive, and misleading to consumers because they obstruct consumers' ability to accurately compare the cost of purchases made through Depop's platform with the prices offered by competing marketplaces and retailers. These fees distort the competitive marketplace by preventing consumers from understanding the true cost of a transaction until the very end.

37. Depop is obligated to disclose its Marketplace Fee along with the initial advertised price. It is not enough for Depop to do so once consumers reach the final checkout screen. But that is exactly what Depop does.

38. Through its drip-pricing practices, Depop squeezes additional revenue from consumers' wallets because "a shopper may have put so much time into the shopping process that

---

[3] *See* Press Release, Fed. Trade Comm'n, *FTC, Illinois Attorney General Take Action Against Grubhub for Harming Diners, Workers, and Small Businesses* (Dec. 17, 2024), available at https://www.ftc.gov/news-events/news/press-releases/2024/12/ftc-illinois-attorney-general-take-action-against-grubhub-harming-diners-workers-small-businesses.

[4] *See* Press Release, Ill. State Rep. Bob Morgan, *Rep. Morgan's 'Junk Fee Ban Act' Passes Illinois House with Full Support from Governor Pritzker, Attorney General Raoul, and Speaker Welch* (Apr. 10, 2026), available at https://repbobmorgan.com/rep-morgans-junk-fee-ban-act-passes-illinois-house-with-full-support-from-governor-pritzker-attorney-general-raoul-and-speaker-welch/ (quoting Attorney General Kwame Raoul).

by the time additional fees or charges are disclosed they have already made up their minds to make a purchase."[5]

39. Depop's failure to clearly and conspicuously disclose the true nature and purpose of its Marketplace Fee violates these federal principles and unfairly obscures the true cost of using the platform. Depop's conduct is deceptive under various state consumer protection laws and contradicts the federal regulatory guidance designed to protect consumers from precisely this type of hidden-fee and drip-pricing deception.

**III. <u>Plaintiff's Experience</u>**

40. On or about August 31, 2025, Plaintiff Rivera made a purchase through Depop's website while residing in Chicago, Illinois.

41. Depop advertised a price of $400.00 for the item Plaintiff planned to purchase. This price was relied upon by Plaintiff in deciding to make his purchase.

42. Depop displayed shipping of $7.99 and sales tax of $43.94, but did not disclose any Marketplace Fee until the final checkout screen.

43. At checkout, Depop added the $20.70 Marketplace Fee, bringing the total amount charged to $472.63: $400.00 for the item, $7.99 for shipping, $20.70 for the Marketplace Fee, and $43.94 in sales tax.

44. The Marketplace Fee appeared for the first time on the final payment screen, in small text within an itemized list of charges, and only after Plaintiff had entered his shipping and payment information and was prepared to complete his purchase. Plaintiff did not notice the Marketplace Fee before compling his payment. By that point, Plaintiff had already invested

---

[5] Investopedia, *Understanding Drip Pricing: Definition and Examples* (Jan. 6, 2026), https://www.investopedia.com/terms/d/drip-pricing.asp.

substantital time and effort in reviewing the item, evaluating its advertised price, and entering his information.

45. The Marketplace Fee was not included in the original price of the item advertised on Depop's website which Plaintiff ultimately purchased.

46. Plaintiff did not realize that the Marketplace Fee existed until after he completed his purchases on Depop's website.

47. Because Depop concealed the Fee, Plaintiff reasonably believed that the purchase would cost the advertised $400.00 price plus the disclosed shipping charge and sales tax—not an additional Marketplace Fee.

48. Had Depop disclosed the Marketplace Fee and the true total price upfront, Plaintiff would not have placed the order or would have shopped elsewhere.

49. Plaintiff would like to place orders on Depop in the future, but he cannot reasonably rely on Depop's pricing representations unless Depop takes affirmative action to disclose mandatory Marketplace Fees upfront and stops the drip-pricing practice alleged herein. Moreover, because Depop's Marketplace Fee varies from transaction to transaction and is never disclosed at the initial time an item's price is advertised, Plaintiff cannot know the true total price of any item on Depop's platform before reaching the final checkout screen. Plaintiff therefore remains unable to rely on Depop's advertised prices or to accurately compare Depop's prices against those of competing marketplaces and retailers, and he will continue to suffer this harm absent the injunctive relief sought herein.

## CLASS ALLEGATIONS

50. Plaintiff brings this action on behalf of himself and a Nationwide Class of all other similarly situated persons. The proposed Class is defined as:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid a "Marketplace Fee" or other similar fee when purchasing one or more items from Defendant's platform.

51. Plaintiff also brings this action on behalf of an Illinois Subclass.

52. Excluded from the Classes are Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees, and members of such persons' immediate families, and the presiding judge(s) in this case and their staff.

53. Plaintiff reserves the right to expand, limit, modify, or amend these class definitions, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

54. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

55. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual Class members because Defendant has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

a. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

b. Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

c. Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct alleged herein.

56. The parties are so numerous that joinder is impracticable. The identities of Class members are within the exclusive knowledge of Defendant and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

57. It is impracticable to bring individual claims of members of the Classes before the Court. Class treatment permits many similarly situated persons or entities to prosecute their common claims simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of a class action.

58. Plaintiff's claims are typical of the claims of other Class members in that they arise out of the same wrongful business practices by Defendant, as alleged herein.

59. Plaintiff is a more than adequate representative of the Classes in that Plaintiff is Defendant's customer and has suffered damages because of Defendant's misrepresentations, omissions, and other unlawful conduct as alleged herein. In addition:

a. Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b. There is no conflict of interest between Plaintiff and the unnamed Class members; and

c. Plaintiff's legal counsel has the financial and legal resources to handle the substantial costs and legal issues associated with this type of litigation.

60. Plaintiff knows of no difficulty that would preclude this case's maintenance as a class action.

61. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

62. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, § 815 ILCS 505, et seq.**
**(On Behalf of Plaintiff and the Nationwide Class, or in the Alternative, the Illinois Subclass)**

63. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

64. Plaintiff brings this claim against Defendant under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, et seq. ("ICFA"), on behalf of himself and the Nationwide Class and Illinois Subclass.

65. In construing 815 ILCS§ 505/2, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

66. Depop, Inc. is a "person" as defined by 815 ILCS § 505/1(c).

67. Plaintiff, as well as each member of the Classes, is a "person" as defined by 815

ILCS § 505/1(c) as well as actual or potential "consumer" of the products and services offered by Defendant, or are successors in interest to actual persons or consumers as defined by 815 ILCS § 505/1.

68. The circumstances that relate to the transactions giving rise to this claim occurred primarily and substantially in Illinois because Defendant caused to be disseminated throughout the state of Illinois through advertising, marketing, and other publications, statements that were deceptive and misleading, and which it knew were untrue and misleading.

69. Defendant's course of conduct involved trade or commerce, as its actions were taken in the course of its business in Illinois.

70. Depop's conduct was unfair and deceptive in that Depop used and employed deception, fraud, false promises, and misrepresentations about the true price consumers would pay, including but not limited to: (a) failing to clearly and conspicuously disclose that Depop would impose an additional mandatory "Marketplace Fee" on purchases; (b) concealing, suppressing, and omitting material facts regarding the existence, mandatory nature, amount, and purpose of the Marketplace Fee; (c) disclosing the Marketplace Fee only at the final step of the checkout process—after consumers had invested time and effort selecting items and completing the transaction—thereby depriving consumers of meaningful price choice (i.e., digital "drip pricing"); and (d) imposing a mandatory fee that provides no additional benefit to consumers and is designed primarily to increase Depop's profits.

71. Defendant's conduct was unfair and deceptive in that Defendant used and employed deception, fraud, false promises, and misrepresentations regarding the true price consumers would pay when using the Depop platform to complete their purchases.

72. Defendant's conduct was unlawful. Defendant's conduct violated Illinois law by

representing, expressly and by omission, that consumers would pay only the advertised prices when, in reality, Depop imposed an additional mandatory Marketplace Fee that was not disclosed upfront.

73. Defendant advertised and promoted its products with the intent to induce consumers to complete transactions without disclosing the full and total price, including the mandatory Marketplace Fee.

74. Defendant's representations and omissions created a likelihood of confusion and misunderstanding among consumers regarding the true cost of using Depop to pay for their purchases.

75. Defendant's misrepresentations were material because they were likely to deceive reasonable consumers about the true price they would pay, inducing them to complete purchases and pay more than they reasonably expected. These misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Price is among the most material terms of any consumer transaction, and reasonable consumers attach imortance to the total price they will pay in deciding whether and where to make a purchase.

76. Defendant intended to mislead Plaintiff and the Class members and induced them to rely on its misrepresentations and omissions regarding the true price of purchases through Depop.

77. Had Plaintiff and the Class members known the truth about the mandatory Marketplace Fee, they would not have purchased from Depop or, at a minimum, would have paid less.

78. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the Class members suffered monetary losses when they were charged the undisclosed

Marketplace Fee.

79. The above unfair and deceptive practices and acts by Depop were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and the Class members that they could not reasonably avoid.

80. Depop's aconduct indepdentently constituetes an "unfair" practice within the meaning of the ICFA because it offends public policy; is immoral, unethical, oppressive and unscrupulous; and causes substantial injury to consumers that they cannot reasonably avoid and that is not outweighed by any countervailing benefits to consumers or to competion. The Marketplace Fee is mandatory and non-waivable, and because Depop does not disclose the fee until the final step of the checkout process, consumers cannot avoid it through any reasonable diligence.

81. Defendant knew or should have known that its misrepresentations and omissions would deceive Plaintiff and the Class members. Depop's actions in engaging in the above-named unfair practices and deceptive acts were willful, intentional, and/or done with reckless indifference with respect to the rights of Plaintiff and the Classes.

82. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and the Classes and will continue to both damage Plaintiff and the Classes and deceive the public unless enjoined by this Court.

83. Plaintiff and the Classes seek relief under the Illinois Consumer Fraud and Deceptive Business Practices Act, including (but not limited to) actual damages, compensatory damages, statutory damages, restitution, penalties, injunctive relief, punitive damages, and/or attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class, or in the Alternative, the Illinois Subclass)**

84. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

85. Plaintiff and the Classes conferred a benefit on Defendant when they paid Defendant the Marketplace Fees which they did not agree to and could not reasonably avoid.

86. To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

87. Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

88. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

89. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and respectfully requests that the Court enter judgment as follows:

(a) Certification of this matter to proceed as a class action on behalf of the Classes;

(b) For declaratory and injunctive relief;

(c) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For reasonable attorneys' fees and costs of suit;

(f) For pre-judgment interest; and

(g) Awarding such other relief as this Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: September 15, 2026

**KALIELGOLD PLLC**

By: */s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

Sophia G. Gold
950 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

**SHAMIS & GENTILE, P.A.**
Edwin E. Elliott
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
edwine@shamisgentile.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Phone: (786) 289-9471
Fax: (786) 623-0915
Email: scott@edelsberglaw.com

*Attorneys for Plaintiff and the Putative Classes*